UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MORNINGSTAR HOLDING CORPORATION, a Foreign Corporation qualified to do business in Idaho,<br><br>        Plaintiff,<br><br>   v.<br><br>G2, LLC, a California Limited Liability Company, HENRY GEORGE A/K/A JOHN DOE I, and RICH DOUGLAS A/K/A JOHN DOE II, individually, and as Partners or Members of a Joint Venture,<br><br>        Defendants. | Case No. CV-10-439-BLW<br><br><br>**MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT (Dkt. 19)** |

**INTRODUCTION**

The Court has before it a Motion to Dismiss and/or For Summary Judgment filed

by Defendants G2, LLC and Henry George.  (Dkt No. 19).  The Court heard oral

argument on February 22, 2011.   After considering the arguments and briefing of

counsel, the Court will (1) dismiss with prejudice the negligent misrepresentation claim in

Count One of the Plaintiff's Amended Complaint, (2) dismiss without prejudice and with

leave to amend, the remaining claims in Counts One, and all claims in Counts Two and Three, and (3) deny the balance of the motion.

## BACKGROUND

In August 2003, Plaintiff Morningstar Holding Corporation invested $2,000,000 in a High Yield Investment Program (HYIP), which was later discovered to be a fraudulent criminal scheme. Morningstar claims that it lost all but $15,000 of the investment in the scheme.

During the pendency of a criminal action against the organizers of HYIP, Morningstar hired Defendant G2, LLC to investigate and recover the money Morningstar lost in the HYIP scheme. Defendants Henry George and Rich Douglas were the members of G2 with whom Morningstar's President, Harold McNee Jr., communicated and through which G2 conducted its activities. In addition, G2's registered agent in California is listed as Henry George. However, both George and Douglas's names are aliases. Henry George's true identity is George Goldsmith, and Rich Douglas's true identity is Rich Gurnett. However, to avoid confusion, the Court will refer to the individual defendants by their aliases, since it is by those names they are referred to in the Complaint.

Morningstar entered into an Asset Recovery Agreement with G2 on August 12, 2005, and on the same day, executed a Power of Attorney designating Defendants George and Douglas individually, and "G2, LLC corporately" as its "true and lawful" attorneys. *Amend. Cmplt.*, ¶ 9; *Affidavit of Henry George a/k/a George Goldsmith in Support of*

*Motion to Dismiss and/or Motion For Summary Judgment* (Dkt. 20) ("*George Affid.*"),

¶ 13 & Exhs. 1 & 2. Neither George nor Douglas revealed that their names were aliases,

and Morningstar did not discover this fact until after filing this lawsuit. *Amend. Cmplt.*,

¶ 9.

George and Douglas allegedly made several representations and promises to

Morningstar's President which Morningstar claims were intended to induce it to enter into

the Asset Recovery Agreement. *See Amend. Cmplt.*, ¶ ¶ 7-9, 15. Morningstar was

introduced to Defendants because they had already been involved in the criminal

investigation, and had been hired by other victims to assist recovering their losses.[1]

Accordingly, Plaintiff alleges, Defendants represented that they were experienced

international private investigators, aware of all of the facts of the HYIP scheme, and that

as a result of the on-going criminal investigation, Morningstar would fully recover its

initial investment, as well as "substantially more." *Amend. Cmplt.*, ¶ 7. Defendants

further represented "that they had been working on the case for a substantial time; that

recovery of the money was imminent; and that there would be no need to retain lawyers

or institute further legal proceedings." *Id.* Plaintiff claims that "these representations

were false and were made intentionally or without any reasonable good faith basis in

_____

[1]The Asset Recovery Agreement makes reference to this fact, and sets forth that because these other victims had advanced the fees of the investigation, their recovery would take priority over Morningstar. In this regard, Morningstar was categorized under the Asset Recovery Agreement as a "Tertiary Claimant." *See George Affid.*, Exh. 1, p. 4 (Dkt. 20-1, p. 4).

fact." *Id.*

Plaintiff further alleges that Defendants represented that Morningstar would not have to advance any funds for the investigation because other investors had already done so. *Amend. Cmplt.*, ¶ 8.  In turn, Morningstar would pay a higher commission (50%) of its recovery to G2 than the other investors (20%).  *Id.*

Allegedly contrary to their representations about hiring legal counsel or instituting legal proceedings, Defendants "shopped the case" to several law firms and retained a Florida law firm to pursue bankruptcy and civil claims.  *Id.* at ¶ 11.  Plaintiff alleges that Defendants breached their retention agreement with the law firm, and that Plaintiff was then forced to separately retain the law firm and pay additional contingent fees on top of Defendants' commission of 50%. *Id.*

After the civil and bankruptcy cases were filed on May 8, 2006 and February 16, 2007 respectively (*see Amend. Cmplt.*, ¶ 10), Defendants demanded that Morningstar advance certain expenses to allow the recovery to go forward.  *Id.*, ¶ 12.  Plaintiff alleges this demand was in contravention of their promises and the terms of the Asset Recovery Agreement.  *Id.*  Morningstar did not advance any fees and attempted to renegotiate the agreement.  *Id.* Defendants did not respond.  *Id.*  Morningstar consequently revoked the Asset Recovery Agreement on August 27, 2008, along with the Power of Attorney.  *Id.*

Plaintiff alleges that Morningstar has received its portion of the settlement proceeds from the civil case, is expecting further recovery from the bankruptcy case, and

is voluntarily holding 50% of the recovery funds in the event that Morningstar is found to owe any money to the Defendants. *Id.,* ¶ 13. Morningstar has not disclosed the total amount it has or will receive in settlement on the grounds that bankruptcy court judge has ordered the terms of the settlement remain confidential presently.

Morningstar filed this action originally in state court on May 4, 2010, alleging claims for fraud, intentional and negligent misrepresentation (Count One), negligence (Count Two), breach of fiduciary duty (Count Three), recission (Count Four) and breach of contract (Count Five). Subsequently, Plaintiff discovered that both individual Defendants' names are aliases. Morningstar then filed an Amended Complaint on June 4, 2010, adding Defendants' use of aliases as additional bases for the fraud claims.[2]

Defendants G2 and George removed this case to this Court on August 27, 2010, and move to dismiss all of Plaintiff's claims except for breach of contract,[3] and the claims against Defendant George personally.

---

[2]Defendant Douglas has not been yet been served or appeared in this case. Plaintiff filed a Motion to Remand and requested alternatively to extend the time in which to serve the last individual defendant because of a conflict between the state and federal service time-lines. This Court denied the Motion to Remand and extended the time to serve Defendant Douglas and stayed the action for a period of 60 days, ending on January 28, 2011, to allow for the service. On January 24, 2011, Plaintiff gave notice to the Court that it was unable to serve Defendant Douglas, and that the litigation should resume with a decision on Defendants' motion to dismiss. (Dkt. No. 50).

[3]Defendants' motion asks to have Plaintiff's Amended Complaint dismissed in its entirety, but sets forth no argument to dismiss Plaintiff's claim for breach of contract.

# ANALYSIS

## 1.    <u>Standard of Review for Rule 12(b)(6) Motions</u>

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. at 557.

In a more recent case, the Supreme Court identified two "working principles" that underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

Even after *Iqbal* it appears that dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009)(issued 2 months after *Iqbal*).[4]

_____

[4] The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim. . .." Given *Twombly* and *Iqbal*'s rejection of the

The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service, Inc.,* 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007)(citations omitted).

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 (9th Cir. 2004)**.** The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

---

liberal pleading standards adopted by *Conley,* a question arises whether the liberal amendment policy of *Harris v Amgen* still exists. Nevertheless, the Circuit has continued to apply the liberal amendment policy even after dismissing claims for violating *Iqbal* and *Twombly*. *See Market Trading, Inc. v. AT&T Mobility, LLC*, 2010 WL 2836092 (9th Cir. July 20, 2010) (not for publication). Accordingly, the Court will continue to employ the liberal amendment policy.

**2.      Count One:  Fraud, Intentional Misrepresentation and Negligent Misrepresentation Claims**

Plaintiff alleges that Defendants George and Douglas individually, and as members of a partnership or joint venture, or as G2, committed fraud, intentional and negligent misrepresentation by making the following misstatements, which when made were known or could reasonably have been known to be false:

a.      That Henry George and Rich Douglas were their true names;

b.      That the entity G2 LLC was properly organized with a non-fictitious registered agent;

c.      That recovery of Morningstar's money in the HYIP was "imminent";

d.      That no legal proceeding beyond the pending criminal investigation, would be necessary to collect Morningstar's money';

e.      That Morningstar would not need to retain legal counsel to recover their money;

f.      That Morningstar would recover substantially more money than it originally invested in the HYIP and that the 50% was reasonable because so much money was going to be collected by Defendants that Morningstar would get their initial investment back and a lot more; and

g.      That Morningstar would not need to advance any costs to Defendants because sufficient advance had already been received from other investors.

*Amend. Cmplt.*, ¶ 15.

To prove fraud, a plaintiff must establish the following elements: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the [representation]; (8) his rights to rely thereon; (9) his consequent and proximate injury." *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 108 P.3d 380, 386

(Idaho 2005) (internal citation omitted).   Moreover, these elements must be pled with particularity. That is, a party claiming fraud or mistake is required to go beyond the minimalist requirements of Rule 8(a)(2), and must state "with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b).

Defendants make several arguments as to why Plaintiff's fraud claims should be dismissed including that the claim is insufficiently pled under Fed. R. Civ. P. 9(b), prohibited by the statute of limitations, based on alleged statements that are not actionable and fails to include any allegations of resultant harm. The Court finds that Plaintiff's fraud claim is not sufficient as a matter of law for several reasons as discussed below and therefore grants Defendants' motion to dismiss the claim.  However, the Court will allow Plaintiff an opportunity to move to amend the complaint and submit its Proposed Second Amended Complaint, if Plaintiff deems it appropriate in view of the Court's discussion below and the facts known to Plaintiff at this time.

      **a)**    **Lack of Particularity.**

Defendant argues that Morningstar's fraud claim is not set forth with sufficient particularity under Fed. R. Civ. P. 9(b).  Federal Rule of Civil Procedure 9(b) expressly requires that fraud be pleaded with "particularity."   It is well-established that "[a] pleading is sufficient under Rule  9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).  In this regard, it is

sufficient to plead items such as the time, place and nature of the alleged fraudulent activities. *Id.* Additionally, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). Finally, "[i]n the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Id.* at 765 (*citing Moore*, 885 F.2d at 541).

Morningstar agrees that having filed this lawsuit originally in state court, the Amended Complaint does not comport with the requirements of Fed. R. Civ. P. 9(b). Plaintiff submits an affidavit, however, setting forth its fraud allegations with more particularity, *see Affidavit of Harold D. McNee, Jr. In Opposition to Motion to Dismiss* (Dkt. 27-3)("*McNee Affid.*"), and states that it will seek leave to amend its complaint to include these more particular allegations upon receipt of the Court's decision on this motion. This is appropriate since, as noted earlier, dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d at 737.

The Court has reviewed the McNee Affidavit and finds that, if the affidavit contains all of the facts known to Plaintiff or that Plaintiff would allege in support of its

fraud claim, amendment is very likely futile.  McNee's affidavit fails entirely to establish

several essential elements of the fraud claim.  For example, assuming that Defendant

George's statements regarding prospective events –  the need to hire attorneys or pursue

legal action or the amount of recovery –  are actionable statements, McNee's affidavit

contains no allegation that Defendants knew the statements were false when made or any

circumstances that would support a reasonable inference of such knowledge.   Such

"labels and conclusions, and a formulaic recitation of the elements of a cause of action"

do not meet the federal pleading standards under *Iqbal* and *Twombly*, and Fed. R. Civ. P.

9(b).  *Iqbal*, 129 S.Ct. at 1950; *Twombly*, 550 U.S. at 555.  McNee's affidavit also fails to

set forth any facts as to how George was involved in the fraudulent representations, or

any factual allegations as to how Morningstar was damaged by the misrepresentations of

the individual defendants' true identities.   As such, it clearly falls short of meeting the

pleading requirements of Fed. R. Civ. P. 9(b).

Morningstar appears to be stating affirmatively that it is not able to allege any facts

of injury or harm at this time without discovery.  *See Response to Motion to Dismiss*, at p.

9, (Dkt. 27).  However, as noted earlier, "Rule 8 marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 1950.

Therefore, the Court will dismiss the claim without prejudice and allow Morningstar one

last opportunity to set forth any additional facts *it may now possess* in support of its

claim.

**b)  Statute of Limitations.**

A claim should only be dismissed under Rule 12(b)(6) on the ground that it is barred by the statute of limitations where "it appears from the face of the complaint itself that the limitation period has run." *Guy v. Swift & Co.*, 612 F.2d 383, 385 (8th Cir.1980); *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir.2010).

In Idaho, fraud claims are subject to a three-year statute of limitation period which begins to accrue when the plaintiff discovers the facts constituting fraud.  I.C. § 5-218(4); *Performance Chevrolet, Inc. v. Market Sanc Info. Systems*, 402 F. Supp.2d 1166 (D. Idaho 2005).  In this case, Morningstar's fraud claims accrued when it  "knew or, with the exercise of reasonable diligence, should have been able to know, a cause of action for fraud might exist." *Id.*, (*citing Nerco Minerals Co. v. Morrison Knudsen Corp.*, 140 Idaho 144, 90 P.3d 894, 901 (2004)). Although "the date of discovery is [generally] a fact question for the jury," summary judgment is appropriate when no genuine issue of material fact exists regarding that date. *Id.* at 900.  *See also Stafford v. Morfitt*, 1020 WL 1462304 (D. Idaho 2010) (Cause of action accrues on date Plaintiff knew or should have known of injury).

Defendant argues that Plaintiff's fraud claim is barred by the statute of limitations because Morningstar reasonably knew that the whatever representations were made about

not needing to hire attorneys or take legal action in order to pursue its recovery were false when the bankruptcy and civil cases were filed, on May 8, 2006 and February 16, 2007 respectively. *See Amend. Complt.,* ¶ 10. Since Plaintiff did not file its claim until May 4, 2010, more than three years later, the action is barred. Plaintiff responds that it did not know an essential element of its fraud claim – that it was damaged by the representations – until it learned the amount of its recovery in settlement in early April 2010. Therefore, Plaintiff contends that its claim was timely filed within the three year period.

The Court agrees that the statute of frauds cannot begin to run until the Plaintiff is aware of, or reasonably should be aware of, each essential element of the fraud claim – including that it has suffered harm or injury. *See Performance Chevrolet, Inc., v. Market Scan Information Systems, Inc.*, 402 F.Supp.2d 116, 1172 (D. Idaho 2005). It is not necessary, however, in stating a claim for fraud, that the Plaintiff be aware of actual pecuniary injury. *See Nab v. Hills*, 92 Idaho 877, 452 P.2d 981 (1969). "What must be demonstrated is damage or injury as those words are used in their broader sense." *Id.* This broader sense includes "either pecuniary loss or the alteration of one's position to his prejudice," or "assumed obligations which otherwise he would not have assumed." *Id.* (*quoting Stillwell v. Rankin*, 55 Mont. 130, 174 P. 186 (1918); *accord, Holland Furnace Co. v. Rounds*, 360 P.2d 412, 91 A.L.R2d 340 (Mont. 1961)). Moreover, where the Plaintiff seeks rescission or reformation of a contract based on fraud, no proof of pecuniary damage is necessary. *Id.*

It appears to the Court that, with regard to the alleged misrepresentation that it would not be necessary to file an action or retain an attorney,  Plaintiff was aware of the "fact" of damage – if not the precise amounts thereof – by the time the civil suits and bankruptcy actions were filed.   Normally, this would be sufficient for the Court to dismiss these claims with prejudice.   However, because the Court is allowing the Plaintiff to amend its complaint to cure other deficiencies in its fraud allegations, the Court will dismiss the claims without prejudice, and grant leave to amend the complaint to resolve this issue – either by removing the allegations related to the necessity of filing an action or retaining an attorney, or by alleging facts which make clear that the action is timely as to those claims.  Obviously, the issue may be revisited following the filing of any amended complaint.

### c)    Promissory Fraud.

Representations forming the basis of a fraud claim must "concern past or existing material facts." *Maroun v. Wyreless Systems, Inc.*, 141 Idaho 604, 114 P.3d 974 (Idaho 2005)(*citing Magic Lantern Prods, Inc. v. Dolsot*, 126 Idaho 805, 807, 892 P.2d 480, 482 (1995)(*overruled on other grounds by Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 136 Idaho 466, 36 P.3d 218 (2001)). A claim based on a promise or statement as to a future event is generally not actionable, but "when there is an affirmative promise or statement that  a certain act will be undertaken, such a statement is actionable providing the other elements of fraud are found."  *First Sec. Bank of Idaho, N.A. v. Webster*, 119

Idaho 262, 268, 805 P.2d 468, 474 (Idaho 1991) (Affirming summary judgment where trial court refused to allow extrinsic evidence of fraud where allegations lacked specificity by failing to include allegation that the representation was false when made or that defendant did not intend to keep the promise when made.)   Similarly, "[o]pinions or predictions about the anticipated profitability of a business are not usually actionable as fraud." *Sharp v. Idaho Investment Corp.*, 95 Idaho 113, 504 P.2d 386 (1972).

The Court finds that Plaintiff's allegations regarding potential success of the recovery and timing of the recovery are the type of prospective statements not actionable in fraud.   Without some allegation that the Defendants knew that their promises were false when made, they constitute mere "puffery," and do not state a fraud claim.   Again, there is the temptation to simply dismiss such claims with prejudice, since it is unclear that this deficiency can be cured by amendment.   However, because the Court is allowing the Plaintiff to amend its complaint to cure other deficiencies in its fraud allegations, the Court will dismiss the claims without prejudice and grant leave to amend the complaint to resolve this shortcoming – either by removing the allegations of promissory fraud or by adding allegations that the Defendants knew that the alleged statements and promises regarding the likelihood and timing of success were false when made.   Of course, those allegations will need to be detailed and specific, as required by Rule 9(b).

d)      **Negligent Misrepresentation**.

Defendant moves to dismiss the negligent misrepresentation claim on the basis that

Idaho recognizes this claim in only the narrow context of a professional relationship involving an accountant, which clearly does not exist in this lawsuit. *See Duffin v. Idaho Crop Imp. Ass'n*, 126 Idaho 1002, 1010, 895 P.2d 1195, 1203 (1995). Plaintiff acknowledges that Idaho does not recognize this claim, but nonetheless contends it is entitled to bring the claim because the limitation violates the "equal protection clause." Plaintiff does not specify whether it is referring to the United States Constitution or the Idaho Constitution. Nor does Plaintiff cite any case law or make argument as to how this Court could maintain the cause of action in view of clear Idaho law that no such cause of action exists. This claim will therefore be dismissed. However, this claim will be dismissed with prejudice, since it appears clear that no amendment to the complaint can cure this deficiency.

3.      **Count Two – Negligence Claim**

Morningstar alleges that Defendants George and Douglas, individually and as a member of G2, undertook a duty of care toward Morningstar, which they breached in representing Morningstar:

- By failing, at any time, to disclose their true identities and the designation of a fictitious registered agent for G2 LLC;
- By intentionally and/or negligently misstating the facts contained in Paragraph 15;
- By failing to provide Morningstar with complete or meaningful reports disclosing their activities;
- By drafting, despite differing facts, almost identical affidavits for all their HYIP clients' signatures which created an issue of credibility used against the clients in the civil case;
- By "shopping" the claim, without Morningstar's consent or knowledge, to a

number of law firms in an effort to get the best deal possible for themselves, not necessarily Morningstar; and

- By failing to advise Morningstar that retention of legal counsel was necessary and then delaying the retention of counsel, Morningstar was prevented, on statute of limitation grounds, from utilizing one or more legal theories of recovery in the civil case in Florida which would have entitled Morningstar to additional damages and mandatory attorney fees.

*Amend. Complt.*, ¶ 19. As a result, Morningstar alleges that it "incurred actual damages of at least $800,000 and general damages in excess of $10,000." *Id.*, ¶ 20.

Defendants move to dismiss this claim on the grounds under the rule prohibiting recovery of "purely economic losses" in negligence actions. *See Duffin v. Idaho Crop Imp. Ass'n*, 126 Idaho 1002, 1007, 895 P.2d 1195, 1200 (1995). Morningstar argues that this case falls within the "special relationship" exception to this general rule. *See id.* The Court agrees that Defendants' relationship with Morningstar, elevated by the powers of attorney granted to the individual defendants, may fall under the exception to the "pure economic loss doctrine."

"A special relationship may be established when a professional or quasi-professional performs personal services for a lay person, or when an entity holds itself out as having expertise in a specialized function and, by doing so, knowingly induce[s that person] to rely on that expertise." *Truckstop.Net, LLC v. Sprint Communications Co., LP*, 537 F.Supp.2d 1126, 1139 (D. Idaho 2008). The attorney-client relationship is clearly the type of professional relationship, in which the client relies upon the specialized knowledge, skill and experience of the service provider, that is recognized under the

"special relationship" doctrine.  *See McAlvain v. General Ins. Co. of America*, 97 Idaho 777, 554 P.2d 955 (1976).

Plaintiff alleges that Defendants' specialized knowledge, skill and experience with the HYIP criminal investigation specifically was the basis for the relationship with Morningstar.  As part of the relationship, Morningstar executed the Power of Attorney in favor of the individual defendants both as individuals and agents of G2, *George Affid.*, Exh. 2, (Dkt. 20-2), and also agreed in the Asset Recovery Agreement to take no unilateral action itself so as not to jeopardize Defendants' efforts.  *See George Affid.*, Exh. 1, p. 5, (Dkt. 20-1).   As discussed above, the power of attorney may create a special relationship that even creates a fiduciary relationship.  *See McDougall v. McFall*, 37 Idaho 209, 215 P. 847, 850 (Idaho 1923) (power of attorney factor in creation of fiduciary duty); *United States v. Williams*, 441 F.3d 716, 724 (9th Cir. 2006)(same); *U.S. v. Wyhrauch*, 548 F.3d 1237, n 6 (9th Cir. 2008), *reversed and vacated on other grounds by Wehhrauch v. U.S.*, 130 S. Ct. 2971 (2010) (discussing fiduciary duty created by relationship of special trust arising from power of attorney).

Notwithstanding that a power of attorney may create a "special relationship," Plaintiff in this case has failed to allege any action taken under the Power of Attorney which supports its negligence claim.  There is no allegation that the Defendants negligently exercised their authority under the Power of Attorney, and there is no claim that their exercise of their authority granted by the Power of Attorney resulted in any loss

to the Plaintiff.   As such, Plaintiff's negligence claims are purely contractual in nature, and prohibited by the pure economic loss rule.  Defendants' motion to dismiss Count Two will be granted.  However, as previously noted, dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment."  *Harris v. Amgen, Inc.*, 573 F.3d at 737.   The Court cannot say that the Plaintiff cannot cure the deficiency in the Complaint.   Accordingly, the dismissal will be without prejudice and counsel will be granted leave to amend.

**4.      Count Three – Breach of Fiduciary Duty**

Plaintiff claims that the Power of Attorney it executed in favor of Defendants George and Douglas individually created a fiduciary duty to Morningstar, and that the acts and omissions alleged throughout the Amended Complaint breached this duty, and caused serious financial harm to Morningstar "in excess of $800,000 together with general damages in excess of $10,000."  Plaintiff points to the Uniform Power of Attorney Act, found at I.C. § 15-12-114, enacted on July 1, 2008.

Defendants move to dismiss Plaintiff's breach of fiduciary duty claim on the grounds that the allegations are insufficient to put Defendants on notice of what the claim is, or a basis upon which the Court could reasonably infer Defendants are liable.  Further, Defendant Goldsmith is protected by G2's corporate veil, and should be dismissed from this claim.  Defendants also point out that all acts complained of in the Amended Complaint occurred prior to Idaho's enactment of the Power of Attorney statutes, and

therefore, it is not applicable in this action.

As discussed about, there is some basis to believe that the Power of Attorney may create fiduciary duty under common law. *See McDougall v. McFall*, 37 Idaho 209, 215 P. 847, 850 (Idaho 1923)(Power of attorney was fact considered in deciding special relationship of trust existed giving rise to fiduciary duty.); *United States v. Williams*, 441 F.3d 716, 724 (9th Cir. 2006) (same); *see also U.S. v. Wyhrauch*, 548 F.3d 1237, n 6 (9th Cir. 2008), *reversed and vacated on other grounds by Wehhrauch v. U.S.*, 130 S. Ct. 2971 (2010) (discussing fiduciary duty created by relationship of special trust arising from power of attorney). The Court would not dismiss this claim on this basis alone. Nor would it dismiss Defendant Goldsmith individually as protected by the corporate veil, given that the Power of Attorney appointed him as "attorney in fact" individually to act on behalf of Morningstar. Any duty created by the Power of Attorney was created in him individually.

However, the Court does find that Plaintiff's allegations are insufficient to put Defendants on notice as to what duty Defendants owed the Plaintiff based on the Power of Attorney, what actions the Defendants took that breached the duty, and what harm Defendants incurred as a result. For this reason, Defendants' motion to dismiss on this ground will also be granted. But, again, the dismissal will be without prejudice and counsel will be granted leave to amend the complaint to cure this deficiency.

**5.    Counts Four & Five – Rescission/Breach of Contract**

Defendants did not put forth any argument to dismiss Plaintiff's breach of contract claim.  The Court will not *sua sponte* decide the sufficiency of this claim. Rescission is an equitable remedy and obviously not a stand-alone claim.  The remedy "ideally brings the parties to their pre-contract status quo." *O'Connor v. Harger Const., Inc.*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008). It is available when a mutual mistake of fact is material or fundamental to the creation of a contract, or where a defendant is guilty of fault, such as fraud or a breach of the contract "so material that it destroys of vitiates the entire purpose for entering into the contract." *McEnroe v. Morgan*, 106 Idaho 326, 678 P.2d 595 (Ct. App. 1984)(*citing Blinzler v. Andrews*, 94 Idaho 215, 218, 485 P.2d 957, 960(1971)); *see also Murr v. Selag Corp.*, 113 Idaho 773, 776-77, 747 P.2d 1302, 1305-06 (Ct. App. 1987).

Plaintiff's Amended Complaint sets forth a claim for breach of contract which appears to state a claim upon which relief can be granted.  Rescission may or may not be an appropriate remedy for Plaintiff's breach of contract claim.  Defendants' request to dismiss Plaintiff's request for rescission is denied at this time.

## CONCLUSION

For the reasons stated above, Defendants Motion to Dismiss is granted with respect to Counts One (fraud, intentional and negligent misrepresentation), Two (negligence), and Three (breach of fiduciary duty).  These counts are dismissed **without**

**prejudice**, except as to the negligent misrepresentation claim which is dismissed **with prejudice**.  Plaintiff shall have twenty one (21)  days from the date of this Order to file a Second Amended Complaint.   Defendant's Motion to Dismiss is denied in all other respects.

## ORDER

**IT IS ORDERED:**

1.      Defendants' Motion to Dismiss (Dkt. 19) is GRANTED IN PART and DENIED IN PART; Counts One (excepting the Negligent Misrepresentation Claim), Two and Three of the Amended Complaint are dismissed without prejudice.   The Negligent Misrepresentation Claim set forth in Count One is dismissed with prejudice. The motion is denied in all other respects.

2.      Plaintiff is granted leave to file a Second Amended Complaint to cure deficiencies noted in this decision.   Plaintiff shall have twenty one (21) days from the date of this Order to file a  Second Amended Complaint. Failure to do so will result in the dismissal of Counts One, Two and Three **with prejudice** and without further notice.

DATED:  **March 10, 2011**



_____
Honorable B. Lynn Winmill
Chief U. S. District Judge